I can't help wondering where I can get a copy of the book, Your Honor. John Hilsman of Kring on behalf of Petitioner Gail Wheaton, if I may, I'd like to reserve three minutes of my time for rebuttal. I'd like to start by saying what a pleasure it is to see Judge Fletcher again. Judge Hart, it's a pleasure to meet you, and Judge McCown, I'd like to say that I'm pleased to be bringing you a maritime case so soon after your speech at the Pacific Admiralty Seminar to pay unblushing homage to that speech. Let me start by suggesting that this case has been around the courts for about ten years now, several years at all events, and to quote Jerry Garcia from Truckin, what a long, strange trip it's been. I'd like to just make four quick points and then answer any questions that the Court may have. Point number one is that everybody, the ALJ, the Benefits Review Board, the Solicitor District, all agree that the term we're interpreting here, any State government or any subdivision thereof, is vague and in need of judicial interpretation. Nobody disputes that. Point number two, because that term is an exemption to remedial statute, it is also undisputed that it has to be narrowly construed. There's no argument about that. No, neither of the lower courts happen to mention that point, but there's no argument about it. Point number three is that the interpretation which the Board assigned to this term is irrational for several reasons. First of all, it gives the term a very broad interpretation, indeed the broadest. Secondly, it wasn't based on any sensible test, but rather on factors drawn randomly from apparently what I think of as the Bellinger test, which is the arm of the State test that this Court uses to determine when the Fifteenth Amendment should be applied in district court cases. But thirdly and most importantly, and this is the elephant in the bathtub, the interpretation which the Board gave this term annuls the basic tradeoff that the Longshore Act and workers' compensation in general is based on, and that is civil immunity for the employer in return for no-fault benefits for the employee. And I'd just like to say I'm a maritime tort lawyer. I can't lose this case. No matter what happens, I end up being pleased because if the Court affirms the Board, what it is saying is that lesser governmental entities like the Bridge District who do not enjoy pre-ratification state immunity are liable to their employees not only for state workers' compensation, but necessarily for full maritime tort liability. And while I find that perfectly pleasing, I can't believe that that is what Congress intended. Gilmore and Black, who were the 20th century's leading American commentators on maritime law, said that this exemption was enacted either to enforce sovereign immunity or for no reason at all. And the Director and the Bridge District and the Board are apparently of the belief that it was enacted for no reason at all. I just can't find that credible. The fourth point and last point that I wanted to add. Aren't we in the end, well, we have these competing reasons and there's a statutory structure that tells you whether you're in one system or the other. In a way, it's a categorization system. It tells you where to go and where you get your remedies. But aren't we really left to interpret it on the face of the statute? Well, if the meaning were plain from the face of the statute, I would agree, but it's not. If we could somehow interpret its meaning from the legislative record, I would agree. But we could not. Everybody agrees. So what we have to do then is look back to the history and purpose of the statute. That's the only other source of judicial interpretation other than this general rule that an exemption should be narrowly construed that we can look to. So I'd like you to tell me what are the characteristics of subdivision? Well, exactly, Your Honor. I'm not altogether sure at this point because neither of the courts that heard this listed them. I think that basically there are two tests from which the Court can somehow construe those interpretations or those characteristics. The Hawkins test, which the solicitor is, forgive me, but peddling this morning, and the Bellinger test, which is the arm of the State test. I would specifically note that the board and the ALJ relied on the arm of the State test, which is one which is typically used in the sovereign immunity context. And I would emphasize that the first factor of that test is whether a money judgment should be satisfied out of State funds. This Court has repeatedly said that that is the most crucial question when it comes to applying that test. The board and the ALJ paid lip service to that but completely ignored it because the parties to this case have stipulated that the money judgment in this case will not be exercised against the Treasury. So while I would agree with the lower courts that the Bridge District arguably exercises a small slice of State power, it does not have its thumb in the State pie because it has absolutely no relationship with the State that would require the State Treasury to respond to a judgment hearing. And I think that is the critical factor, Your Honor. Well, it clearly is performing a governmental function and it has a lot of the attributes of government. And if it's not a subdivision of the State, what is it? It's a lesser governmental entity, as the Supreme Court used that term in the Alton v. Main case. Certainly you can argue that municipal and county governments are – I don't think you can argue that they're political subdivisions of a State government because that phrase I think belongs properly to departments like Caltrans or the California Department of Justice or the California Department of Navigation, which are departments of the State. They may be agencies, but subdivisions certainly are cities, counties. They're subdivisions of the State, Your Honor. Geographical subdivisions of the State. They are not subdivisions of State government because they are not answerable to the State government and, more importantly, because they are so independent from the State government that their civil liability does not expose the State Treasury. Now, they're created by State statute. This agency was not, Your Honor. It was not directly created by the State. Everybody agrees with that. This entity was created by an election that was enabled by State statute, but it was created by an election that was conducted in the counties that are affected. So there's no dispute about that. The Golden Gate Bridge District was not directly created by the State. And nor, if we are to follow the Hawkins test, do I think that there is any real dispute. It is not being administered by individuals who are answerable either to State officials or to the general electorate. They were appointed by county officials and by mayors, but there is nothing in this record that suggests that they can be removed at the pleasure of county officials, nor are they responsible in any way directly to the electorate. So even under the Hawkins test, this entity fails. But, again, I can't help but go back to the elephant in the bathtub. If, indeed, the Court affirms this decision, what we now have is an agency that is in the worst of all worlds. It has to answer full tort liability to folks like me. If there's any further questions, I'll be happy to answer it. If not, since I face two very able opponents, I'd like to reserve the rest of my time. All right. You may. May it please the Court. My name is David Russo, and I represent the Respondent Bridge District. This Court has been asked to review Judge Dorsey's decision, which was affirmed by the Benefits Review Board, which held that the Bridge District is a subdivision of the State of California as contemplated under Section 903B of the Longshore Act, and as such is exempt from coverage under the Act. In reaching his decision, Judge Dorsey followed this Court's analysis in the Tinsic case. The Tinsic analysis was derived from the Supreme Court's opinion in NLRB versus Natural Gas Utility District, where the Supreme Court was interpreting a similar exemption using similar language under Section 2 of the National Labor Relations Act. The Director in this case of the Office of Workers' Compensation Programs has urged this Court to adopt that test that flows from NLRB and Tinsic, and this Court has recognized that the Director's position is entitled to considerable weight. Let's go through the test. The test, Your Honor, would be several factors. The courts are looking at the governmental characteristics of the entity at issue, and both Tinsic and Hawkins County have noted several of them. Whether that entity can exercise eminent domain power, a critical characteristic of the public entity. The bridge to Tinsic. It would be extraordinary for a private entity to have that authority. That would be one thing that a private entity could not have. It would have to be a public utility, I suppose. Right. Exactly, Your Honor. Whether or not the proceedings of the entity are open to the public. Hawkins County mentioned this as such as, and which is very rare other than in a governmental sense. And, of course, the bridge to Tinsic has been found to have that characteristic. Its board director meetings are open to the public, and it is subject to the Brown Act. But as counsel says, the board is not elected by the public. It's appointed by other officials. Is that an important distinction? No, Your Honor, because Hawkins County actually wasn't that narrow. In Hawkins County, the second prong, the Supreme Court asked whether the members of the board, the governing body of the entity, are either appointed by officials or answerable to them or the electorate. Here, the district's board of directors are appointed by mayors, county supervisors, and counsel. For how long? They serve in varying terms, and I do not know the exact number. For several years. A couple of years at least. And they're answerable to them in what way? They are answerable, as some of them are elected officials themselves. And that's the only way in which they are. Okay. So 8 of 19 are elected officials? Yes, Your Honor. There are other characteristics that the courts have mentioned. Go ahead. Whether or not the entity can establish a revenue stream, such as fixing and collecting tolls, which was, of course, important in a couple of cases. They fix the tolls themselves. They set the toll. Yes, Your Honor. And they collect them. And they collect them. And are the tolls adequate to cover their costs? I do not know, Your Honor. They don't have to get money from some other source? It is my understanding, and this is not in the record, but it is my understanding that there are other available sources, including funding from various agencies. Bonding. They have bonding power? Your Honor, the district has had the power to issue bonds in the past for its projects, including, of course, notably the building of our famous Golden Gate Bridge. Pass ordinances? It has the power to pass ordinances to carry out its actions. And those are then enforced by the State or by someone acting on behalf of the State? It would be enforced by someone acting on behalf of the State. And those only relate to, however, such things as traffic regulations, as we cited in our brief. We're not talking a statewide power. Right. But, for instance, they can pass their own traffic regulations, and those would be enforced by the CHP acting on their behalf. Do you agree with opposing counsel that immunity would be lost if we were to rule in your favor? Your Honor, the bridge district has never argued that it is entitled to Eleventh Amendment immunity. You don't claim it now, do you? We don't claim that now. This case is not about Eleventh Amendment immunity. It's about the construction of Section 3B. It's like a city doesn't have Eleventh Amendment immunity. Correct, Your Honor. Whether you would lose immunity or not is not do you think that's a factor here? No, Your Honor. If one looks at the line of cases that we're addressing, none of them have incorporated that constitutional issue into Section 3B's construction. And as the Benefits Review Board said in its decision, it is not necessary to inject that constitutional issue into the construction of Section 3B. Tinzig did not. Once you get categorized, then there may be various other consequences that would flow from that, correct? Hard to say, Your Honor. I would not want to speculate. We've been focused on the effects of that categorization under the Longshore Act. Right, under the Longshore Act. But all I'm saying is that our decision in whether as to whether under the Longshore Act the category is as a subdivision should not be implicated by trying to make a broader policy decision as to whether there is downstream consequences, correct? I would agree with that, Your Honor. And I see my time is up in terms of we're going to be sharing argument with the Director, unless the Court has any other questions. No? There's none. Thank you. Good morning. Helen Cox for the Director, Office of Workers' Compensation Programs. In the Director's view, subdivision as used in Section 3B should be given its ordinary meaning, that a subdivision of the State must be a lesser government entity. And then the way to determine whether that lesser government entity is a subdivision and exclude it from the Longshore Act coverage, the Director follows the guidelines of the Supreme Court, which has interpreted the term that as it arose under the National Labor Relations Act in a very similar statute or section. And therefore, the ALJ followed that and applied those guidelines. We see no reason to inject any limitation to arms of the State into the Section 3B, because if subdivision were read as synonymous to arms of the State, then the term subdivision would have been unnecessary to that section, because State itself would have incorporated any agency that would have been considered an arm of the State and entitled to Eleventh Amendment sovereign immunity. So for those reasons, we think, since all parties agree the term is ambiguous, the Secretary of Labor, as put forth by the Director, interpretation of the statutory language is a reasonable interpretation, it's the ordinary interpretation, and it's entitled to deference, and since the ALJ followed that terminology and followed the factors provided, the guidance provided by this Court in its Tenzik decision and the Board's Keating decision and applied those factors and weighed those factors, the process of determining whether the bridge district is a subdivision was properly done here, and that is the question of whether the ALJ's fact-finding is supported by substantial evidence. And we believe, as the Board found, that substantial evidence does support the ALJ's decision, and for that reason, the bridge district was properly found to be a subdivision and, therefore, its employees excluded from the Longshore Act coverage. If you all have no further questions, it appears that. And the fiction is that the Hawkins test has been a factor in this case. It has not. The Tenzik case makes absolutely no mention of Hawkins. The Benefits Review Board made absolutely no mention of Hawkins. The ALJ made absolutely no mention of Hawkins. You can read all those decisions and you will not see one single citation or reference to Hawkins. The ALJ, the Benefits Review Board, and this Court in Tenzik did not use the test which the solicitor is trying to put before the Court. They used the arm of the State test, the Bellinger test, that this Court uses to enforce issues of sovereign immunity. And the single most important factor in that test is a factor we've already stipulated does not exist here, and that is that this judgment will not be paid out of State Treasury. The Hawkins test is a complete fiction. Now, immunity. It was suggested that we are trying to put constitutional immunity at issue here. We're not. The Bridge District never had constitutional immunity. The immunity we're talking about is the civil immunity that arises by virtue of the exclusive remedy provisions of the Longshore Act. If the State, if the Bridge District cannot avail itself of that immunity, it stands wide open to lawsuits under maritime torts. The one other point I want to make quickly about Hawkins, the Hawkins test arose from the Wagner Act, and the Hawkins test was specifically designed to exclude municipalities and counties because the public employees of those counties do not have the right to strike. That's clear from the congressional record. We have nothing remotely like that. There is not a constitutional issue in this case. We're not arguing that the statute violates any constitutional principles in any way. We're simply arguing for an interpretation which abides by those constitutional principles and affords lesser governmental entities like the Bridge District the civil immunity which they were entitled to under the exchange that underlay the whole system. So the suggestion that we are somehow dragging constitutional issues in this case and the Board's conclusion that we did is simply flatly wrong. That's not what's at issue here at all. The only immunity that's at issue here is the exclusive revenue provisions. There's one other point that I would like to make that isn't strictly rebuttal and that is this. It was suggested in the briefs that this the Congress must have had this immunity in mind because until the Alden v. Maine case came down, the Supreme Court had repeatedly held that a valid Federal statute automatically abrogates a State immunity. So that in order to avail itself of the pre-ratification Tenth Amendment immunity, a State had to be specifically exempted from the Act. That's exactly what Congress did in 1927 and again in 1978 and 84 or 72 and 84 when it kept this exemption in. It's phrased only to exempt States. It's not phrased to exempt lesser governmental entities. And the Bridge District, God bless it, is certainly a public entity and the Bridge itself is a national landmark, but it is not an arm of the State of California. And as a consequence, it has absolutely no entitlement to this exemption, and that's the only way, this exemption is the only way that it can obtain the civil immunity that ordinarily the workers' compensation context would give it. Bottom line, Your Honor, to quote Smokey Robinson from the classic 1965 hit The Court made a mistake in this case. And this Court, applying Tinsic, should overturn it. All right? Thank you. Thank you, Your Honor. I thank all counsel for your argument this morning. The case of Wheaton v. Director of the Office of Workers' Compensation Programs is submitted.
judges: Fletcher, McKeown, Hart